**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 22-cv-1118-WJM-KLM

CHRISTOPHER WHITEHILL,
KIM HERB,
ERIC HERB,
LAURIE JACOBS,
DAVID JACOBS,
JARED MARTINEZ,
SHELLY RICHARDSON,
LOUIS RICHARDSON,
MICHAEL GILLIS,
LILY FAIRCHILD,
DEBORAH HARRY,
JOEL HARRY,
ROBERT BALDAUFF,
SHELLEY BALDAUFF,
MICHAEL J. KEY,
LIZ TORRES,
ADAM MACKE,
SCHUYLER JOSEPH VREEMAN,
BRANDON ANDERSON,
JESSICA ANDERSON,
CHARLES GIBSON,
GARY VINOVICH,
DAN MERCER,
ROGER S. APPLEWHITE,
HEDIEH POURNIK,
KURT WITHERS,
LINETE APARICIO-CHAGOLLA, and
ADAM CHENY, individually and on behalf of themselves and all those similarly situated,

        Plaintiffs,

v.

ATLANTIC BUILDING SYSTEMS, LLC, d/b/a ARMSTRONG STEEL CORPORATION,

        Defendant.

**ORDER GRANTING IN PART MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS**

Twenty-eight Plaintiffs filed this putative class action against Defendant Atlantic Building Systems, LLC, a Delaware limited liability company doing business as Armstrong Steel Corporation with its principal place of business in Colorado. (ECF No. 1.) Plaintiffs seek to represent a nationwide class and assert claims breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, advertising of goods not available, and violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*  (*Id.*)  Plaintiffs assert jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  (*Id.* ¶ 28.)

Plaintiffs allege that Defendant engaged in a scheme of falsely advertising its "Metal Building System" to induce customers to place orders and submit 25% deposits, despite its inability to meet demand and deliver the building systems approximately 120 days from purchase, as advertised.  (*Id.* ¶¶ 1–4.)  In addition, Plaintiffs allege Defendant consistently demanded payments in excess of the contract price before delivering the building systems and refused to repay deposits to customers unwilling to pay these additional amounts.  (*Id.* at ¶¶ 5–6.)

Before the Court is Defendant's Motion to Compel Arbitration and Stay Proceedings ("Motion") (ECF No. 18).  For the reasons stated below, the Motion is granted.

**I. LEGAL STANDARD**

Pursuant to § 2 of the Federal Arbitration Act ("FAA"), a written agreement to

submit a controversy to arbitration "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Congress enacted the FAA to enshrine a "liberal federal policy favoring arbitration" in response to judicial hostility to arbitration agreements.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Hall Street Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).  An arbitration agreement stands on equal footing with other contracts, and a court is required to enforce such an agreement according to its terms.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  Such an agreement is generally enforced as written, "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Grounds for invalidation of an arbitration agreement include contract defenses, such as fraud, duress, or unconscionability.  *Rent-A-Center*, 561 U.S. at 68.  The Court looks to Colorado contract law to determine whether an arbitration agreement is enforceable.  *THI of New Mexico at Hobbs Center, LLC v. Patton*, 741 F.3d 1162, 1167 (10th Cir. 2014).

Challenges to an arbitration agreement must specifically contest the formation of the arbitration clause; a challenge to the contract as a whole is insufficient.  *Rent-A-Center*, 561 U.S. at 72 ("[U]nless [plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967).  If the party opposing arbitration does not specifically challenge the validity of the arbitration provision and the contract contains a savings clause, the agreement to arbitrate may be severed from the remainder of an otherwise-unenforceable contract.  *Rent-A-Center*, 561 U.S. at 70–71; *see Santich v. VCG Holding Corp.*, 2017 WL 4251944 (D. Colo. Sept. 26, 2017).

"[D]oubts are to be resolved in favor of arbitrability."  *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995).

In addition to considering contract defenses, a court must also evaluate whether arbitration will allow for effective vindication of a party's statutory claims.  *Nesbitt v. FCHN, Inc.*, 811 F.3d 371, 376–77 (10th Cir. 2016)*; Sanchez v. Nitro-Lift Techs, L.L.C.*, 762 F.3d 1139, 1149 (10th Cir. 2014).  If the terms of the arbitration clause would prevent a party's effective vindication of its statutory claims, a court may strike the portion which prevents effective vindication and compel arbitration on the remaining terms.  *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1176–78 (D. Colo. 2016).  If the party resisting arbitration argues that the cost of arbitration would prevent effective vindication, that party has the burden to show that arbitration would be "prohibitively expensive."  *Sanchez*, 762 F.3d at 1149.

## II. BACKGROUND

Plaintiffs each entered into separate contracts with Defendant to purchase its "Metal Building System."  (ECF No. 18 at 2.)  These contracts took the form of "Purchase Orders," setting out, among other things, custom specifications, the delivery address, deposit, and balance due on delivery for the Plaintiffs' orders.  (*See, e.g.*, ECF No. 18-1.)  Between this information and the signature lines, the Purchase Order contains additional terms  ("Terms and Conditions").  (*See, e.g.*, *id.*)  Among these terms is the following provision, written in capital letters: "THIS PURCHASE ORDER IS SUBJECT TO AND INCLUDES THE TERMS AND CONDITIONS SET FORTH AT www.armstrongsteel.com/terms WHICH BUYER HEREBY ACKNOWLEDGES RECEIVING AND REVIEWING."  (*Id.*)  There is also a separate line, in capital letters and

requiring the buyer's initials, that reads: "BY INITIALING HERE, BUYER

ACKNOWLEDGES THAT HE/SHE HAS REVIEWED AND, AFTER REVIEW, AGREED

TO THE TERMS AND CONDITIONS APPEARING AT

WWW.ARMSTRONGSTEEL.COM/terms/."  (*Id.*)

The Terms and Conditions incorporated by reference into the Purchase Orders

were periodically amended, and Plaintiffs' contracts are subject to three different versions

of those Terms and Conditions (ECF No. 18 at 3); however, the provisions relating to

mandatory arbitration, delegating questions of arbitrability to the arbitrator, and

application of the FAA are "identical" across all three versions of the Terms and

Conditions ("Arbitration Clause") (*Id.*).  The Arbitration Clause contained in the Terms and

Conditions read, in relevant part:

> **JURISDICTION, MANDATORY VENUE AND WAIVER OF
> JURY TRIAL –** The terms of this PO shall be . . . shall be
> governed by and construed in accordance with the laws of the
> State of Colorado.  Further, Buyer acknowledges, stipulates
> and agrees that this PO . . . shall be governed by and
> interpreted in accordance with the laws of the State of
> Colorado. Buyer acknowledges, stipulates and agrees that
> any and all claims, actions, proceedings or causes of action
> relating to the validity, performance, interpretation, alleged
> breach and/or enforcement hereof shall (i) only be asserted,
> submitted for resolution, and/or heard or tried in Arapahoe
> County, Colorado, and (2) shall be asserted and/or submitted
> for resolution only by mandatory arbitration, under the
> commercial rules of the American Arbitration Association
> ("AAA").  The party initiating arbitration shall advance all costs
> thereof. The parties have agreed that all questions of
> arbitrability, including the validity and scope of the arbitration
> agreement, are reserved for arbitral rather than court
> determination. The Federal Arbitration Act shall govern the
> enforcement of this arbitration provision. Buyer specifically
> consents to the resolution of any dispute by arbitration, and
> irrevocably submits itself to the exclusive exercise of personal
> jurisdiction over Buyer by the arbitral forum in Arapahoe
> County, Colorado, for the resolution of such dispute. . . . In

addition to any other liability Buyer may have to Seller, Buyer agrees to pay to Seller all legal and other expenses incurred by Seller in collecting any amounts due from Buyer or incurred in any other dispute, claim or controversy arising out of or relating to this Agreement. . . . Seller shall be entitled to recover its attorneys' fees and costs against Buyer: (a) in any court action filed against Seller by Buyer; and (b) in any arbitration proceeding in which Seller is the prevailing party on any claim brought by either party. **FURTHER, EACH PARTY KNOWINGLY AND VOLUNTARILY AGREES TO WAIVE A TRIAL BY JURY WITH RESPECT TO ANY CLAIM RELATING TO OR ARISING UNDER THIS PO, INCLUDING ITS ENFORCEMENT OR ANY ALLEGED BREACH.** . . . Buyer acknowledges that the foregoing waivers are material inducements to the agreement of Seller to enter into a business relationship with Buyer, and that Seller has already relied on these waivers in entering into this PO. . . .

(*E.g.*, ECF No. 18-21 at 18–19.)

## III. ANALYSIS

Defendant argues that "[a]ll of the claims alleged by Plaintiffs relate to the contractual agreements subject to the Terms and Conditions" and must therefore be submitted to arbitration. (ECF No. 18 at 6.) Additionally, because the "contractual agreements between Plaintiffs and Armstrong contemplate only individual arbitrations . . . , the Court must compel individual arbitrations to address the claims raised by each plaintiff in this action." (*Id.* at 7.)

In response, Plaintiffs raise three arguments for why the Arbitration Clause is unenforceable: (1) "it completely prevents Plaintiffs and putative class members from obtaining any effective vindication of their rights under the law"; (2) "the parties' agreement to arbitrate is not mutual and Defendant failed to provide any consideration in exchange for Plaintiffs' agreement to arbitrate"; and (3) Defendant "is not . . . identified as a party to the contract." (ECF No. 19 at 2.) Plaintiffs "challenge the enforceability of [the Arbitration Clause] rather than the validity of the contract[s] as a whole." (*Id.*)

6

A.      **Effective Vindication**

Plaintiffs argue that the arbitration clause, as drafted by Defendant, is so one-sided that it makes access to the arbitral forum impracticable.  (ECF No. 19 at 3.)  In other words, they argue the clause runs afoul of the "effective vindication" doctrine, which has its roots in *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614 (1985).  Under the doctrine, "if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights," the clause cannot be enforced.  *Shankle v. B–G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999).

Plaintiffs argue the arbitration clause prevents them from effectively vindicating their statutory rights because of the prohibitive costs the clause would impose to access the arbitral forum.  (ECF No. 19 at 4–7.)  The Arbitration Clause provides that "[t]he party initiating the arbitration shall advance all cost thereof."  (ECF No. 18-21 at 18.)  Under this provision, Plaintiffs assert each plaintiff and putative class member would "have to pay the entire cost of arbitration just for the opportunity to vindicate their rights."  (ECF No. 19 at 5.)  Because the clause selected the American Arbitration Association's ("AAA") Commercial Rules, Plaintiffs assert these fees, exclusive of arbitrator compensation, are thousands of dollars.  (*Id.*)  And while the arbitrator may defer or reduce fees based on economic need, Plaintiffs argue that being at the mercy of an arbitrator's discretion is not the same as the protections afforded by Plaintiffs' statutory claims.  (*Id.*)

Beyond arbitration fees and arbitrator compensation, Plaintiffs argue the arbitration clause discourages them and putative class members from pursuing their statutory claims because Defendant "shall be entitled to recover its attorneys' fees and costs . . . in any arbitration proceeding in which [it] is the prevailing party on any claim brought by

either party." (ECF No. 18-21 at 19; ECF No. 19 at 6.) Under this provision, Defendant could recoup its attorneys' fees even if the arbitrator finds against it on all but one claim decided—and there is no corresponding or reciprocal provision under which Plaintiffs or putative class members could recover attorneys' fees and costs. (ECF No. 18-21 at 19; ECF No. 19 at 6.) Moreover, should Defendant prevail, it can recover "all legal or other expenses incurred . . . in collecting any amounts due from [Plaintiffs and putative class members] or incurred in any other dispute, claim or controversy arising out of or relating to" the contract. (ECF No. 18-21 at 19.)

In essence, Plaintiffs argue, the Arbitration Clause goes to great lengths to shift all possible costs of arbitration to them and erects such a significant barrier to accessing the arbitral forum that it denies them effective vindication of their statutory rights. And because, according to Plaintiffs, the Arbitration Clause does not contain a "savings clause" it is "incapable of being salvaged" and should be stricken in its entirety. (ECF No. 19 at 6–7.)

Defendant argues Plaintiffs misconstrue the fee-shifting provisions of the arbitration agreement and exaggerate their deterrent effect. (ECF No. 23 at 4–7.) Relying on *Green Tree Corporation–Alabama v. Randolph*, 531 U.S. 79, 90–92 (2000), Defendant argues that cost-shifting provisions do not render arbitration agreements *per se* unenforceable, and "the proper approach is to conduct a case-by-case inquiry" wherein the party resisting arbitration bears the burden of showing the agreement prevents them from effectively vindicating their rights. (ECF No. 20 at 3–4.)

Defendant argues the provision requiring the party initiating arbitration to "advance all costs thereof" does not require the initiating party to advance all costs of the

arbitration, but rather only the costs of *initiating* the arbitration. (*Id.* at 4.) Defendant

argues Plaintiffs also misunderstand the effect of selecting the AAA Commercial Rules to

govern the arbitration. (*Id.* at 4–5.) While Plaintiffs cite the AAA fee schedule to support

the proposition that initiating arbitration would cost thousands of dollars, Defendant

argues that selecting the AAA Rules—which are industry standard—does not require that

an AAA arbitrator preside over the arbitration. (*Id.* at 5.) Per Defendant, it is common for

third-party arbitrators to preside over disputes applying AAA Rules. (*Id.*) And even if the

Plaintiffs or putative class members chose to initiate arbitration with the AAA, the

Purchase Orders demonstrate that Plaintiffs are well-heeled enough to front the filing

fees.[1] (*Id.*) Without concrete evidence, "there is no reason to conclude that individuals

with [the] kind of resources [Plaintiffs have] would be deterred by the foreseeable costs of

initiating arbitration." (*Id.*)

With respect to the provisions shifting attorneys' fees, Defendant argues "Colorado

law permits the provision[s] at issue in an arbitration agreement," citing a landlord-tenant

case in which a jury trial was held. (*Id.* at 6 (citing *Butler v. Lembeck*, 182 P.3d 1185,

1190 (Colo. App. 2007)).) It further argues that a "provision that gives the arbiter

*discretion* to potentially award attorney fees or costs does not invalidate an arbitration

agreement." (*Id.* (citing *Frazier v. Western Union Co.*, 377 F. Supp. 3d 1248, 1271 (D.

Colo. 2019)).)

Defendant contests Plaintiffs' argument that any offending provisions cannot be

excised, leaving the rest of the Arbitration Clause intact. (*Id.* at 6–7.) Contrary to

Plaintiff's assertions, Defendant argues there is in fact a savings clause. (*Id.*) Paragraph

---

[1] Defendant notes that "each Plaintiff had the resources to pay at least $17,000 (and in several cases well more than $100,000) for a metal building system." (ECF No. 23 at 5.)

19 of the Terms and Conditions states, in relevant part:

> If any provision contained in this Contract (or its application to any person or circumstance) shall to any extent be held void or invalid by a Court the remainder of this Contract (or the application of such provision to persons or circumstances other than those as to which it is held or invalid) shall not be affected thereby, and each provision of this Contract shall be valid and enforced to the fullest extent of the law.[2]

(*See, e.g.*, ECF No. 18-21 at 21; *see also* ECF No.23 at 6–7.)  Accordingly, Defendant argues, in the event the Court finds any of the fee-shifting provisions interfere with Plaintiffs' or putative class members' effective vindication of their statutory rights, the Court should "sever any provisions that create that situation from the agreement and to compel arbitration under the remaining terms."  (ECF No. 23 at 6.)

Upon consideration of the parties' arguments, the Court finds that the attorneys and collections fee-shifting provisions prevent Plaintiffs and putative class members from effectively vindicating their statutory rights and strikes those provisions from the Arbitration Clause.  The provision that "Seller shall be entitled to recover its attorneys' fees and costs against Buyer . . . in any arbitration proceeding in which Seller is the prevailing party on any claim brought by either party" is particularly onerous and one-sided.  As Plaintiffs point out, Defendant would be entitled to attorneys' fees in an arbitration in which the arbitrator found against it on all but one claim.  (ECF No. 19 at 6.) Such a provision has the unacceptable potential of substantially chilling even the most determined of class members pursuing even the most meritorious of claims.  Adding to over-reaching nature of this provision is the fact that there is no mirror provision to protect buyers from claims brought by Defendant.  Moreover, Defendant is entitled to "all legal

---

[2] This provision appears in all versions of the Terms and Conditions applicable to Plaintiffs.  (*See* ECF No. 18-21 at 21; ECF No. 18-22 at 21; ECF No. 18-23 at 22.)

and other expenses incurred by [it] in collecting any amounts due from [Plaintiffs or putative class members] or incurred in any other dispute, claim or controversy arising out of or relating to" the Purchase Order.  (ECF No. 18-21 at 19.)  Again, there is no reciprocal provision for Plaintiffs and putative class members.  (*See id.*)

With respect to the provision concerning the initiation of arbitration, the Court finds Defendant has the better of the arguments.  A straightforward reading of the contract language is that "thereof" refers to "initiating arbitration," not the arbitration as whole. Determining the total cost of arbitration—which could vary based on length of proceedings, complexity of motion practice, arbitrator rates, and other factors—at the onset would be completely impractical, even for a party that could afford to pay.  Under the more natural reading of the provision, the costs are predictable.  The Supreme Court has instructed that, under the FAA, courts will enforce arbitration agreements just like any other contract.  *Rent-A-Center,* 561 U.S. at 67.

Having determined that two of the fee-shifting provisions Plaintiffs contest prevent them and putative class members from effectively vindicating their statutory rights, the Court must now consider whether those clauses can be severed without striking the arbitration provision in its entirety.  Despite Plaintiffs' argument that there is "no savings clause"—as Defendant points out—there clearly is.  (*See, e.g.*, ECF No. 18-21 at 21.) Applying Paragraph 19 of the Terms and Conditions, the Court severs the fee shifting provisions without striking the "initiating arbitration" provision or the Arbitration Clause as a whole.

**B.    Mutuality and Lack of Consideration**

Plaintiffs argue the Arbitration Clause is "unenforceable because the parties' agreement to arbitrate is not mutual[,] and Defendant failed to provide any consideration

in exchange for Plaintiffs' agreement to arbitrate."  (ECF No. 19 at 7.)  Plaintiffs argue this lack of mutuality is apparent from the plain language of the contract, which references only "Buyer[s]" in the sentence providing for arbitration and alternatively "Seller[s]" or "each party" in other sentences.  (*Id.* at 9.)

Defendant argues that under Colorado law, mutuality is not a prerequisite to enforcement of an arbitration clause.  (ECF No. 23 at 7–8 (citing *Rains v. Foundation Health Sys. Life & Health*, 23 P.3d 1249, 1255 (Colo. App. 2001)).)  And, in any event, Defendant asserts the "plain language of the agreements confirms that there is a mutual agreement to arbitrate all claims between the parties."  (*Id.* at 8.)  In support, Defendant selectively quotes the same sentence Plaintiffs rely upon: "Buyer acknowledges, stipulates and agrees that any and all claims, actions, proceedings or causes of action relating to the validity, performance, interpretation, alleged breach and/or enforcement hereof shall . . . be asserted and/or submitted for resolution only by mandatory arbitration."  (*Id.* at 9; ECF No. 18-21 at 18.)

The Court need not decide what the "plain" meaning of the Arbitration Clause is because, under Colorado law, an "arbitration provision is not unenforceable simply because it does not require defendant to arbitrate."  *Rains*, 23 P.3d at 1255.  So long as both parties have offered valid consideration, the arbitration provision is enforceable. *Vernon v. Qwest Commc'ns. Int'l, Inc.*, 925 F. Supp. 2d 1185, 1194 (D. Colo. 2013) (quoting *Rains*, 23 P.3d at 1255)).  Here, the consideration is obvious; Defendant promised to provide its Metal Building System, and Plaintiffs promised to pay the agreed amounts for Defendant's product.  "Furthermore, as long as the arbitration clause is valid, any claim based on Defendant's failure to perform, which [Plaintiffs are] making, is the

proper subject of arbitration." *Nowak v. Volt Mgmt. Corp.*, 2009 WL 1392084, at *2 (D. Colo. May 15, 2009).

## C.     Parties to the Arbitration Clause

Plaintiffs' final argument is that Defendant "is not even identified as a party in the contracts or its allegedly incorporated Terms and Conditions." (ECF No. 19 at 10.)   The Plaintiffs and putative class members signed Purchase Orders with "Armstrong Steel," and the Terms and Conditions containing the Arbitration Clause are found at www.armstrongsteel.com.   (*Id.* at 10.)  Nowhere is there any reference to Defendant, Atlantic Building Systems.  (*Id.*)  Because arbitration is a matter of contract, Plaintiffs argue Defendant cannot enforce the Arbitration Clause, even if it is otherwise valid and enforceable.  (*Id.* at 10–12.)

Defendant argues there is no dispute that "Armstrong Steel" is merely a trade name for Atlantic Building Systems.  (ECF No. 23 at 10.)  Defendant contends Plaintiffs have made binding admissions acknowledging these facts in the Complaint.  (*Id.*; *see* ECF No. 1 at ¶¶ 1–2, 25.)  Defendant argues these admissions should prevent Plaintiffs from "avoiding the arbitration provisions of the same agreements whose benefits they seek to enforce." (ECF No. 23 at 11 (quoting *Smith v. Multi-Financial Secs. Corp.*, 171 P.3d 1267, 1272 (Colo. App. 2007)).)

The Court finds Defendant's argument compelling.  Plaintiffs' Complaint is premised entirely on the assertion that they were injured by Defendant because of its failure to timely deliver the Metal Building Systems they purchased in contracts with Armstrong Steel.  Central to Plaintiffs' claims is the assertion that Defendant is in fact a party to the Purchase Orders, and therefore bound by the promises therein.  Plaintiffs cannot have it both ways—either they believe Defendant is a party to the Purchase

Orders, which incorporate the Terms and Conditions, or not.  "Allegations in a complaint are binding admissions, and admissions can of course admit the admitter to the exit from the courthouse."  *Rios v. Redding*, 2022 WL 842749, at *2 (10th Cir. March 22, 2022).  In this case, that is precisely what Plaintiffs have done.

**D.      Class Arbitration**

In the Motion, Defendant seeks an order compelling separate, bilateral arbitrations between it and each of the plaintiffs and putative class members.  (ECF No. 18 at 7.)  Under *Stolt-Nielsen S.A. v. AnimalFeeds International Corporation*, bilateral arbitrations are presumed unless "parties *agreed to authorize* class arbitration."  559 U.S. 662, 684–687 (emphasis in original).  The Court sees nothing in the arbitration provision contemplating class arbitration, and Plaintiffs do not argue otherwise.  (*See* ECF No. 19.)  Therefore, consistent with Supreme Court precedent, the Court will order bilateral arbitrations.

**E.      Stay**

Defendant requests the Court issue a stay, pending the parties' arbitration in Arapahoe County, Colorado.  (ECF No. 18 at 6.)  Having found the issues in this action arbitrable under the Terms and Conditions, incorporated by reference into the contracts between Plaintiffs and Defendant, the Court must stay this action.  *See* 9 U.S.C. § 3.

### IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court ORDERS as follows:

1.      Defendant's Motion to Compel Arbitration and Stay Proceedings (ECF No. 18) is GRANTED IN PART and DENIED IN PART;

2.      The attorneys and collections fee-shifting provisions of the Arbitration Clause are SEVERED. The Arbitration Clause, as will be enforced in conformity with the terms

of this Order, will not include the following language:

    a)  "In addition to any other liability Buyer may have to Seller, Buyer agrees to pay to Seller all legal and other expenses incurred by Seller in collecting any amounts due from Buyer or incurred in any other dispute, claim or controversy arising out of or relating to this Agreement"; and

    b)  "Seller shall be entitled to recover its attorneys' fees and costs against Buyer . . . in any arbitration proceeding in which Seller is the prevailing party on any claim brought by either party";

3.    Plaintiffs, to the extent they wish to pursue the claims alleged in this lawsuit, must do so through separate, bilateral arbitrations under the laws of the State of Colorado in Arapahoe County, Colorado;

4.    This action is hereby STAYED pending the conclusion of Plaintiffs' arbitration proceedings in Arapahoe County, should they choose to commence any; and

5.    Pursuant to D.C.COLO.LCivR 41.2, the Clerk shall ADMINISTRATIVELY CLOSE this case, subject to a motion to reopen for good cause subsequent to the conclusion of Plaintiffs arbitration proceedings in Arapahoe County, if any.

Dated this 10th day of February, 2023.

BY THE COURT:

William J. Martinez
Senior United States District Judge