# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01118-WJM-KLM

CHRISTOPHER WHITEHILL,
Individually and on behalf of himself and
all those similarly situated,

    Plaintiffs,

v.

ATLANTIC BUILDING SYSTEMS, LLC,
d/b/a ARMSTRONG STEEL CORPORATION,

    Defendant.

## RESPONSE TO PLAINTIFFS' PETITION TO APPOINT ARBITRATOR(S)

Defendant Atlantic Building Systems, LLC, d/b/a Armstrong Steel Corporation ("Armstrong") submits the following Response to Plaintiffs' Petition to Appoint Arbitrator(s) ("Petition"):

1. This case was administratively closed by the Court on February 10, 2023. See Docket No. 46. A party seeking to reopen a case that has been administratively closed must demonstrate good cause. See D.C. Colo. L.CivR 41.2. Plaintiffs have not filed a motion to reopen the case.

2. In the event that the Court will not require a separate motion demonstrating good cause to reopen the case before considering the merit of Plaintiffs' Petition, Armstrong will address the Plaintiffs' requests proactively in this Response.

3. Plaintiffs request that this Court appoint "an arbitrator and/or arbitrators" to decide disputes between at least some of the named Plaintiffs and Armstrong. Armstrong objects to the appointment of a single arbiter to determine the claims by all Plaintiffs. This Court has already ordered the Plaintiffs to pursue their claims "through separate, bilateral arbitrations," which is "consistent with Supreme Court precedent" (See ECF No. 45 at pp. 14-15).

4. The request for the Court's involvement to select arbitrators is also premature and unwarranted. As such, the requests raised by Plaintiffs' Petition are not ripe for review and the case need not be reopened for that purpose.

**A.** **This Court Ordered Separate Bilateral Arbitrations Consistent with U.S. Supreme Court Precedent**

5. In Stolt-Nielsen S.A. v. AnimalFeeds International Corporation, 559 U.S. 662, 682-87 (2010), the Supreme Court discussed why the court "must give effect to the contractual rights and expectations of the parties" when construing an arbitration agreement and not presume the parties agreed to class arbitration when said agreement is silent because the differences between classwide arbitration and bilateral arbitration are too great.

6. Bilateral arbitrations are presumed unless "parties agreed to authorize class arbitration." 559 U.S. 662, 684-87 (emphasis in original)

7. As Armstrong previously briefed (See ECF Nos. 18 and 23), and as this Court previously agreed, there is "nothing in the arbitration provision contemplating class arbitration, and Plaintiffs do not argue otherwise." (See ECF No. 19).

8. Therefore, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Stolt-Nielsen at 684 (emphasis in original). See also Stender v. Cardwell, No. 07-cv-02503-REB-MJW,

2

2010 U.S. Dist. LEXIS 52395, at *16 (D. Colo. May 12, 2010) ("Acceding to the clear import of Stolt-Nielsen, plaintiffs filed a motion to withdraw their motion insofar as it seeks to compel class-wide arbitration . . .").

9. In Pollard v. ETS PC, Inc., this Court held that plaintiffs could not bypass a class action lawsuit by joining multiple arbitrations into one proceeding and that plaintiffs failed to show that defendants affirmatively agreed to something other than "the typical 'bilateral' arbitration." No. 16-cv-0097-WJM-MJW, 186 F.Supp.3d 1166, 1188 (D. Colo. May 12, 2016). In this case, the Court appropriately ordered separate, bilateral arbitrations - meaning a proceeding where each individual plaintiff independently litigated their individual claims against Armstrong.

10. Appointing a single arbiter for the arbitration of the claims made by all of the separate Plaintiffs in this case is not exactly the same thing as compelling a class action arbitration, but it is a distinction without a meaningful difference. Armstrong is entitled to a separate and independent determination of any claims that any particular Plaintiff may wish to pursue. Those determinations should be made without any consideration or knowledge of sperate claims made by other Plaintiffs.

11. Armstrong objects to the appointment of a single arbiter to resolve claims by more than one Plaintiff, except for those Plaintiffs who are involved as parties to the same transaction.

**B.    Court Intervention to Appoint Arbitrator is Unwarranted**

12. Plaintiffs request that this Court appoint an arbitrator pursuant to 9 U.S.C. § 5 and Section 206 or Section 303.

13. Under the Federal Arbitration Act ("FAA"), if the subject arbitration provision provides a method for appointing an arbitrator, then the procedure in the arbitration agreement

3

shall be followed. 9 U.S.C. § 5; C.R.S § 13-22-211(1). If a method is not provided, an appointed arbitrator fails to act or is unable to act and a successor has not been appointed, or there is a lapse in naming an arbitrator, then either party to the controversy may involve the Court to "designate and appoint an arbitrator . . . who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein." 9 U.S.C. § 5; C.R.S. § 13-22-211(1).

14. "Although Congress provided for judicial intervention when an impasse in the arbitrator selection process has occurred, the FAA makes clear that the parties must adhere to their contractual arbitrator selection procedure if one exists." AVIC Int'l US, Inc. v. Tang Energy Grp., Ltd., No. 3:14-CV-2815-K, 2015 U.S. Dist. LEXIS 13968, at *7-8 (N.D. Tex. Feb. 5, 2015). "[T]he FAA expressly favors the selection of arbitrators by parties rather than courts." Shell Oil Co. v. Co2 Comm., Inc., 589 F.3d 1105, 1109 (10th Cir. 2009). See also Allen v. Horter Inv. Mgmt., LLC, No. 1:20cv11, 2020 U.S. Dist. LEXIS 181315, at *9 (S.D. Ohio Sep. 30, 2020) (finding no "lapse" conferring Court jurisdiction under FAA because "[b]oth parties are amenable to private arbitration and the names of specific arbitrators have been exchanged"); Avalos v. Chavez, No. EP-17-CV-241-KC, 2020 U.S. Dist. LEXIS 268946, at *9 (W.D. Tex. Feb. 21, 2020) (denying plaintiff's motion to appoint arbitrator absent good faith efforts to mutually agree on arbitrator); BP Expl. Libya Ltd. v. Exxonmobil Libya Ltd., 689 F.3d 481, 491 (5th Cir. 2012) (appointing arbitrator when parties "reached an impenetrable deadlock over the appointment" that lasted "for months").

15. Here, the Purchase Order Terms and Conditions state that the parties "agree[d] that any and all claims, actions, proceedings or causes of action relating to the validity, performance, interpretation, alleged breach, or enforcement hereof . . . shall be asserted and/or submitted for

resolution only by mandatory arbitration, under the commercial rules of the American Arbitration Association ("AAA")." (See Dkt. 18, **Exhibit U**).

16. The AAA rules state "[t]he parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules." See Commercial Arbitration Rules and Mediation Procedures, AMERICAN ARBITRATION ASSOCIATION, Section R-1 Agreement of Parties, p. 10, https://adr.org/sites/default/files/Commercial%20Rules.pdf.

17. In their Petition, Plaintiffs concede that the arbitration provision "require[s] the usage of the American Arbitration Associations' rules." See Pet. at ¶ 7.

18. Pursuant to the AAA, "[i]f the parties have not appointed an arbitrator and have not provided any other method of appointment," then the AAA sets forth procedures for appointment. See Commercial Arbitration Rules and Mediation Procedures, AMERICAN ARBITRATION ASSOCIATION, Section R-13 Appointment from National Roster, p. 18, https://adr.org/sites/default/files/Commercial%20Rules.pdf.

19. Here, as the Petition states, the parties have exchanged a list of potential arbitrators. See Pet. at ¶¶ 2-4.

20. Since approximately March 9, 2023, through the present, counsel for Plaintiffs and Armstrong have communicated in good faith to select potential arbitrators. As a threshold issue, Armstrong needed to know which of the named Plaintiffs desire to proceed with arbitration. Plaintiffs' counsel himself acknowledged that it would be useful to "have an additional list of our present clients that intend to move forward with individual arbitrations by the end of next week"

and that list "should provide some idea of the universe of claimants we are dealing with in the near future." See Pet., Exhibit A, at p.3 (Dkt. 53-1).

21. On March 10, 2023, counsel for Armstrong communicated to Plaintiffs' counsel that, despite not having a complete list of claimants, Armstrong started its internal review of the arbitrator candidates. See **Exhibit A**, Email from Mike Decker to A. Scott Waddell, dated Mar. 10, 2023.

22. On March 24, 2023, Plaintiffs' counsel indicated that all but one of the claimants wanted to proceed with arbitration. Id. On March 28, 2023, Armstrong's counsel indicated that he would communicate that information to Armstrong and continue to review the list of proposed arbitrator candidates. Id. On March 30, 2023, Armstrong's counsel reiterated that confirming the identities of the claimants who wanted to proceed with arbitration was an "essential first step and entirely out of our control." Id. Because the identities were confirmed just a week before that, Armstrong's counsel advised of his preference to voluntarily work with Plaintiffs' counsel to select the arbitrator. Id. Instead, Plaintiffs' counsel filed the instant Petition.

23. There has been no "lapse" under 9 U.S.C. § 5.

24. Lastly, Plaintiffs request that this Court appoint an arbitrator under 9 U.S.C. §§ 206[1] or 303[2]; however, reliance upon either section is inapplicable to this matter because arbitration

---

[1] "A court having jurisdiction under this chapter [9 USCS §§ 201 et seq.] may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 206.
[2] "A court having jurisdiction under this chapter [9 USCS §§ 301 et seq.] may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. The court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 303(a). "In the event the agreement does not make provision for the place of arbitration or the appointment of arbitrators, the court shall direct that the arbitration shall be held and the arbitrators be appointed in accordance with Article 3 of the Inter-American Convention." 9 U.S.C. § 303(b).

between foreign countries or citizens of foreign countries are not at issue. Even if these sections applied, they state that the arbitration shall be held "in accordance with the agreement." 9 U.S.C. §§ 206 and 303. As mentioned above, the parties agreed to arbitrate under the AAA commercial rules.

25. Therefore, Armstrong respectfully requests that this Court allow the parties to continue to work together in good faith to appoint necessary arbitrators, or in the alternative, although premature in the course of this matter, order that the AAA appoint the arbitrator according to its commercial rules.

WHEREFORE, Armstrong respectfully requests that this Court deny Plaintiffs' Petition and refrain from issuing an order appointing an arbitrator pursuant to the parties' agreement and the AAA rules to which the parties agreed.

Respectfully submitted on April 21, 2023.

          MURPHY & DECKER, P.C.

          */s/ M. Jaclyn Thompson*
          Michael J. Decker, Esq.
          M. Jaclyn Thompson, Esq.

          730 17th Street, Suite 925
          Denver, Colorado 80202
          Telephone: (303) 468-5980
          Fax: (303) 468-598
          mdecker@murphydecker.com
          jthompson@murphydecker.com

          COUNSEL FOR DEFENDANT
          ATLANTIC BUILDING SYSTEMS, LLC
          D/B/A ARMSTRONG STEEL
          CORPORATION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 21, 2023, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system and served to the following:

Jack D. McInnes, Esq.  
McInnes Law, LLC  
1900 West 75th Street, Suite 220  
Prairie Village, Kansas 66208  
jack@mcinnes-law.com

*Counsel for Plaintiffs*

A. Scott Waddell, Esq.  
Waddell Law Firm, LLC  
1900 West 75th Street, Suite 220  
Prairie Village, Kansas 66208  
scott@aswlawfirm.com

*Counsel for Plaintiffs*

*/s/ M. Jaclyn Thompson*  
M. Jaclyn Thompson